**In re Peter Michael CHESSEN, Debtor.**

**Bankruptcy No. 86–00780.**

United States Bankruptcy Court,
D. Hawaii.

March 13, 1987.

Jerrold Guben, Honolulu, Hawaii, for FDIC.

Kathy J. Gumpel, Honolulu, Hawaii, for debtor.

### MEMORANDUM DECISION AND ORDER DENYING MOTION TO LIFT STAY

JON J. CHINEN, Bankruptcy Judge.

On December 8, 1986, the Federal Deposit Insurance Corporation ("FDIC") filed a Motion to Lift Stay so that it could proceed with the action entitled: *"Federal Deposit Insurance Corporation, Receiver for Indian Springs State Bank v. Peter Michael Chessen"*, Case No. 83–2476, in the United States District Court for the District of Kansas.

A hearing was held on February 13, 1987, at which time Jerrold Guben, Esq. appeared on behalf of FDIC and Kathy Gumpel, Esq. appeared on behalf of debtor.

The Court, being advised in the Premises herein, having considered the arguments of counsel, and having reviewed the Motion to Lift Stay, renders this memorandum decision and order.

Through its First Amended Complaint, FDIC seeks to recover damages against debtor under two counts. FDIC alleges in Count I that debtor failed to repay two loans to the Indian Springs State Bank ("ISSB") that are evidenced by two promissory notes in the principal sums of $100,-000.00 and $50,000.00, respectively. The notes provided for semi-annual payment of interest which accrued at the annual rate of 15%, and were payable on demand.

In Count II, FDIC asserts that debtor acquired his loans from ISSB through two separate and distinct instances of fraud. First, FDIC claims that debtor recklessly and knowingly submitted to ISSB a written credit application and financial statement that exaggerated his net worth by more than $500,000.00 and exaggerated his annual income by nearly $100,000.00. Second, FDIC claims that debtor knowingly and willfully participated in a "loan pulling" scheme, enabling Sam Daily, Franklin Winkler and others to circumvent ISSB's legal lending limits. Specifically, it is claimed that debtor executed two promissory notes whereby he personally promised to repay two loans to ISSB. ISSB claims that it reasonably relied on these notes in extending loans to debtor totalling $150,-000.00. ISSB further claims that, when debtor executed the promissory notes, debtor did not intend to personally repay the loans. As a result, it is claimed that ISSB has sustained damages in the amount of $150,000.00, together with unpaid interest.

By Memorandum and Order dated October 2, 1986, the District Court in Kansas granted the FDIC summary judgment on the contract claims. The Kansas Court refused, however, to permit debtor to assert affirmative defenses and counterclaims in the Kansas Action for the reason that he was estopped from doing so under *D–Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). As a

result, the only issues remaining for trial are those relating to FDIC's fraud claims.

On December 1, 1986, debtor filed a petition in the United States Bankruptcy Court for the District of Hawaii under Chapter 7 of the United States Bankruptcy Code.

The FDIC has filed a Complaint to Determine Dischargeability (Adversary 87–0019) by which it seeks an exception to discharge pursuant to 11 U.S.C. § 523(a)(2)(A) and (B) under the same allegations of fraud as those set forth in FDIC's First Amended Complaint in the Kansas Action.

Through this Motion for Relief from Stay, FDIC now seeks authority to proceed with the trial of the Kansas Action to adjudicate issues of liability under FDIC's fraud claims with the issue of dischargeability to be determined by this Court.

The Kansas Action has been on file for three years. The issues raised by that action are identical to those that are raised by FDIC's Complaint to Determine Dischargeability in this action. The facts underlying those claims have been fully investigated and discovered in the Kansas Action. For the Kansas District Court to undertake the litigation of the liability issues at this time would result in needless duplication of judicial resources, since this Court must make the determination as to the dischargeability of the debt.

■ The FDIC is entitled to have the liability issues adjudicated and its claim liquidated. Those matters can be as easily resolved by this Court as it could be in Kansas. The determination of nondischargeability is an exclusive function of the bankruptcy court, unimpeded by claims of collateral estoppel or res judicata.

Under § 523 of the Bankruptcy Code, the bankruptcy court has the exclusive jurisdiction to determine dischargeability. *In re Comer,* 723 F.2d [737] at 740: *In re Houtman,* 568 F.2d [651] at 653. To make this determination, the court must consider all relevant evidence bearing on the nature of the debt. ·

*In re Daley,* 776 F.2d 834, 839 (9th Cir. 1985.)

■ Exceptions to discharge are narrowly construed against the creditor and liberally construed in favor of the debtor. *See e.g. In re Pochel,* 64 B.R. 82 (Bankr.C. D.Ill.1986); *In re Jenkins,* 61 B.R. 30 (Bankr.D.N.D.1986).

■ Because debtor's affirmative defenses and counterclaims cannot be heard in the Kansas action, it is possible that three (3) distinct proceedings will result if this Court were to lift the automatic stay to allow the FDIC to proceed with the Kansas action.

The Court thus concludes that the interest of judicial economy will be best served by having this Court determine the dischargeability of the debt and the amount of the debt, if any.

Now therefore,

IT IS HEREBY ORDERED that the FDIC's Motion to Lift Stay, filed herein on December 8, 1986 be, and the same is, hereby denied.