In re Sergio SANCHEZ, Debtor.

New Austin Roosevelt Currency Exchange, Inc., Plaintiff,

v.

Sergio Sanchez, Defendant.

Bankruptcy No. 01 B 17542.
Adversary No. 01 A 01185.

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

May 20, 2002.

---

906

James G. Uzzell, Chicago, IL, Attorney for Plaintiff.

Neil P. Gantz, Attorney for Defendant.

### MEMORANDUM OPINION DENYING DEFAULT JUDGMENT

JACK B. SCHMETTERER, Bankruptcy Judge.

Debtor–Defendant Sergio Sanchez ("Debtor") filed his related Chapter 7 Bankruptcy Petition. Plaintiff–Creditor New Austin Roosevelt Currency Exchange, Inc. ("Plaintiff") brought the instant Adversary proceeding objecting to dischargeability of Plaintiff's debt to it under the fraud exception 11 U.S.C. § 523(a)(2)(A). Debtor failed to answer and did not appear at a scheduled status hearing. Plaintiff then moved under Fed. R.Bankr.P. 7055(a) for entry of default judgment. An order of default was entered. Plaintiff sought to prove up its case by affidavit and seeks a judgment by default that its debt is nondischargeable because it arose from Debtor's issuance of a bad check. However, the Complaint thereby defaulted and the prove-up affidavit filed do not demonstrate even *prima facie* a basis for relief. For reasons discussed below Plaintiff's motion is denied. The case will be set for trial to see if Plaintiff can show additional matters that warrant relief.

### JURISDICTION

This court has jurisdiction over this matter under 28 U.S.C. § 1334(a) and 28 U.S.C. § 157. This matter is referred here by District Court Internal Operating Procedure 15(a), and is a core proceeding under 28 U.S.C. § 157(b)(2)(I). Venue lies in this district pursuant to 28 U.S.C. § 1409(a).

### ALLEGATIONS OF THE COMPLAINT AND AFFIDAVIT

Plaintiff is an Illinois corporation doing business in the city of Chicago. It is a licensed currency exchange which provides check cashing and other financial services to customers of "limited means." Therefore, Plaintiff says it prefers to cash checks drawn against a business as opposed to personal checks. Plaintiff avers that "for a long and continuing time" it had cashed checks drawn on the account of Atlas Garage, a non-corporate business owned by Debtor. Plaintiff never had any problem collecting on those checks until November 1998.

On November 27, 1998, Debtor issued a business check for $662.00 to his employee, Thomas Lopez ("Lopez"). That check was drawn on Debtor's account under name of "Atlas Garage." Plaintiff avers that it cashed that check in reliance on the implied representation of Debtor to pay the check or to make good on the check if it was dishonored. The check was returned by the drawee bank for insufficient funds. In January 1999, Plaintiff sent Debtor a

certified letter demanding that he pay the check plus a returned check fee. Debtor never responded to the letter, and a lawsuit was filed by Plaintiff against Debtor in state court. Debtor closed his business several months after the issuance of the check in question and filed his first Chapter 7 case in October of 1999. However, that case was dismissed in February 2000 due to Debtor's failure to provide information requested by the Trustee. Debtor's current Chapter 7 was filed on May 15, 2001, and the instant Adversary proceeding was filed in November.

Plaintiff argues that Debtor cannot discharge its debt because when he caused his business check to issue Debtor knew or should have known that there were not sufficient funds to cover the check and his other obligations. Plaintiff contends that Debtor's issuance of the check constitutes "conventional fraud" and therefore its debt is nondischargeable under 11 U.S.C. § 523(a)(2)(A).

## DISCUSSION

*Standard for Entry of Default Judgment*

■ Rule 7055(b)(2) Fed.R.Bankr.P. governs default judgments entered by a bankruptcy court. A movant is not entitled to default judgment as a matter of right even though the debtor is in default under Rule 55(a) [Fed.R.Bankr.P. 7055(a)]. *Lewis v. Lynn,* 236 F.3d 766, 767 (5th Cir.2001). Panels in this Circuit have eschewed traditional notions disfavoring default judgments. *Stafford v. Mesnik,* 63 F.3d 1445, 1450 (7th Cir.1995); *Profile Gear Corp. v. Foundry Allied Industries, Inc.,* 937 F.2d 351, 354 (7th Cir.1991); *Matter of State Exchange Finance Co.,* 896 F.2d 1104, 1106 (7th Cir.1990). However, in the bankruptcy context, where a debtor has a presumptive right to a discharge, default judgment motions should not be granted unless the movant shows

that its debt is nondischargeable as a matter of law. *Valley Oak Credit Union v. Villegas,* 132 B.R. 742, 746 (9th Cir. BAP 1991) (court must determine whether plaintiff is entitled to judgment); *In re McArthur,* 258 B.R. 741, 746 (Bankr. W.D.Ark.2001) (noting that bankruptcy courts have taken a conservative approach and sometimes refrain from granting default judgment motions which deprive debtor of discharge).

Thus, the issue here is whether Plaintiff has shown at least *prima facie* facts meeting the legal requirements to except a debt from discharge under § 523(a)(2)(A).

*Section 532(a)(2)(A)*

■ To except a discharge for fraud, the creditor must prove each element of Section 523(a)(2)(A) by evidence. *Grogan v. Garner,* 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *Matter of McFarland,* 84 F.3d 943, 946 (7th Cir.1996). Consistent with the Code's policy of granting a discharge to all but dishonest debtors, exceptions to discharge are narrowly construed in favor of the debtor. *McClellan v. Cantrell,* 217 F.3d 890, 893 (7th Cir.2000); *In re Scarlata,* 979 F.2d 521, 524 (7th Cir.1992).

Section 523 provides in relevant part:

(a) A discharge under section 727 … of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A).

■ False pretense under § 523(a)(2)(A) is where the debtor makes an implied misrepresentation or engages in

conduct intended to create and foster a false impression. *In re Bryson*, 187 B.R. 939, 959 (Bankr.N.D.Ill.1995, Schmetterer, J). In contrast to a "false pretense," a "false representation" is an express misrepresentation. *Id.* There is no single definition of fraud since that term embraces any intentional deception or trick whereby one individual gains advantage over another. *McClellan*, 217 F.3d at 893. Section 523(a)(2)(A) only reaches intentional frauds. *Id.* at 894.

■ Plaintiff contends that Debtor defrauded it by making false misrepresentations. Thus, it must show: (1) that Debtor obtained funds giving rise to his debt through a false representation that he knew to be false or which was made with such utter disregard for the truth as to be equivalent to a willful misrepresentation; (2) that Debtor intended to deceive Plaintiff; and (3) that Plaintiff detrimentally and justifiably relied on the misrepresentation. *Scarlata*, 979 F.2d at 525. (Although *Scarlata* applied "reasonableness" standard, the Supreme Court later held the requirement to be "justifiable" reliance *Field v. Mans*, 516 U.S. 59, 73–75, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995)). Further, the representation must be of current or past facts. Promises to do an act in the future are not false representations. *Caez v. Jacob*, No. 97 B 27010, 97 A 01644, 1998 WL 150493, *4 (Bankr.N.D.Ill.).

■ Generally, the utterance of a bad check, without more, is insufficient to show a false misrepresentation. *Williams v. United States*, 458 U.S. 279, 284, 102 S.Ct. 3088, 73 L.Ed.2d 767; *Scarlata*, 979 F.2d at 525. This is because a check is not a "statement"; rather, it is an order to a drawee bank to pay the face amount upon presentment, supported by a promise to remunerate the bank in the future or to make good on the check if it is dishonored. *Williams*, 458 U.S. at 284, 102 S.Ct. 3088.

However, circumstantial evidence can be introduced to show that the issuance of a bad check was intended to defraud a creditor. *In re Blake–Ware*, 155 B.R. 476 (Bankr.N.D.Ill.1993) (express statement that worthless check was good was sufficient to render debt nondischargeable); *In re Levitsky*, 137 B.R. 288, 291 (Bankr. E.D.Wis.1992) (debt nondischargeable where circumstantial evidence showed debtor intended to defraud creditors by issuing bad checks); *In re Fitzgerald*, 109 B.R. 893 (Bankr.N.D.Ind.1989) (same).

Plaintiff argues that "... when a business gives someone a check which may come to Plaintiff it is representing to Plaintiff that it intends to pay and believes it can do so." It fails to deal with the contrary authority which holds that a check is not a "statement" of intent. A check by itself is a mere promise to pay money in the future either to the drawee or a holder, if the check is dishonored. *Williams*, 458 U.S. at 285, 102 S.Ct. 3088. Such promises are not statements or representations of present or past facts that would qualify to except a debt under § 523(a)(2)(A). *Caez v. Jacob*, No. 97 B 27010, 97 A 01644, 1998 WL 150493, at *4 (Bankr.N.D.Ill.). Likewise, since a check is not a present assignment of funds, it is akin to a statement about the debtor's future financial condition, which by itself is also not sufficient under § 523(a)(2)(A). *Bryson*, 187 B.R. at 960.

■ Plaintiff has not offered any circumstantial evidence to establish that Debtor intended to defraud it. To the contrary, it states that the instant case marks the first time Debtor ever bounced a check to Plaintiff. Plaintiff has not shown that Debtor had no intent to honor the check, or that the dishonor of it was not the result of some financial difficulties that drove Debtor into bankruptcy. Any doubt as to the Debtor's motives must be

resolved in favor of granting the discharge. Plaintiff's contention that "Debtor's circumstances were such that he could not have intended to honor his promise to make good on the dishonored check" is unsupported by evidence. Mere conclusory averments in a complaint will not suffice to deprive a debtor of its discharge. Debtor's pleaded inability to pay the debt should not be confused with the need to show intent to defraud Plaintiff. *In re Pochel*, 64 B.R. 82, 85 (Bankr.C.D.Ill.1986).

Finally, the cases cited by Plaintiff all involved express statements that formed the basis of the fraud found in each. For example, in *Matter of Allison*, 960 F.2d 481 (5th Cir.1992), the debtor induced the creditor to give it a second mortgage for 80% of the purchase price for certain real property by agreeing to limit any senior mortgages to 20% of the purchase price. On the same day that the debtor made this representation, he executed a first mortgage for four times that amount. *Id.* at 482–83. Further, none of the cases cited by Plaintiff involved the utterance of a bad check. *See In re Soderlund*, 197 B.R. 742 (Bankr.D.Mass.1996); *In re Spar*, 176 B.R. 321 (Bankr.S.D.N.Y.1994); *Marineau v. Slonim*, No. 94–047–C, 1994 WL 661143 (W.D.Va.). Thus, these cases are not applicable here. Instead, the present case is analogous to *Scarlata*, *Bryson*, and *Pochel* where the courts held that the mere issuance of a bad check is insufficient to bar a debt from discharge under § 523(a)(2)(a). *In re Scarlata*, 979 F.2d at 525; *In re Bryson*, 187 B.R. at 960 (citing *Scarlata*, 979 F.2d at 525); *In re Pochel*, 64 B.R. at 85.

■ Unlike the currency exchange check in *Blake–Ware*, Plaintiff does not show that it relied on statements from Debtor that there were sufficient funds in his account to cover the checks. *Blake–Ware*, 155 B.R. at 476. Rather, Plaintiff asserts that it relied on business custom which it says treats a check drawn on a business as a representation that the business owner intended to honor the check. Notwithstanding, this custom, which is asserted here as a way of changing the legal effects of a check, as matter of law a check is not a representation of the sufficiency of the issuer's bank account or its intent to make a present transfer of funds to a holder or payee. *Williams*, 458 U.S. at 284–85, 102 S.Ct. 3088 (check makes no representation as to drawer's bank balance). Thus, Plaintiff cannot except its debt from discharge merely by showing that it is derived from a bad check.

## CONCLUSION

Plaintiff has not met its burden *prima facie* to show by prove-up following default that its debt should be excepted from discharge. The averments in Plaintiff's complaint and supporting affidavit, even taken as true, only show that Debtor uttered a check without sufficient funds to cover it. It is well settled that the utterance of a bad check, without additional evidence of an intent to defraud a creditor, is insufficient to except a debt from discharge under § 523(a)(2)(A). Therefore, consistent with that authority, Plaintiff's motion for entry of default judgment is denied, and the case will be set for trial to see whether evidence can be offered to prove more than has been shown thus far.